THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOHAN ANDRES VELASQUEZ MONTILLO,<br><br>Petitioner,<br><br>v.<br><br>NATE BROOKSBY, Washington County Sheriff; RUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); BRIAN HENKE, Field Office Director for Las Vegas/Salt Lake City; KRISTI NOEM, Secretary United States Department of Homeland Security; PAMELA BONDI, U.S. Attorney General,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; ORDERING RELEASE AND REPORTS**<br><br>Case No. 4:26-cv-00018-DN-PK<br><br>District Judge David Nuffer |

Petitioner Johan Andres Velasquez Montillo filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(a), alleging he is being unlawfully confined in violation of the Constitution and laws of the United States.[1] Mr. Velasquez challenges the actions of U.S. Immigration and Customs Enforcement's ("ICE") detaining him on February 12, 2026. He presented himself with his wife and three daughters at the United States' southern border in November 2021.[2] They were detained under 8 U.S.C. § 1226[3] and released with conditions three

---

[1] Petition for Writ of Habeas Corpus ("Petition"), docket no. 1, filed February 14, 2026. These preliminary facts are not disputed by the United States. Federal Respondents' Response to Order to Show Cause ("Response") at 2, docket no. 16, filed February 19, 2026.

[2] *Id.* at 3, ¶ 5.

[3] *Id.* at 3, ¶ 7.

days later.[4] Mr. Velasquez has not violated those conditions.[5] He has not received any notice of violations and was not arrested with a warrant. Mr. Velasquez and his family have a pending asylum claim.[6]

Mr. Velazquez was arrested by ICE agents at his workplace on February 12, 2026, at the direction of ICE/ERO Acting Field Office Director Ruben Leyva, Field Office Director Brian Henke, Secretary of Homeland Security Kristi Noem, and U.S. Attorney General Pamela Bondi (collectively, "Federal Respondents").[7] He was held in the Washington County Jail in the custody of Washington County Sheriff Nate Brooksby.[8] Three days later, Mr. Velasquez was moved to the Nevada Southern Detention Center.[9]

Mr. Velasquez argues "[o]nce a noncitizen has been released into the United States and placed into § 1229a proceedings, detention authority arises, if at all, under [8 U.S.C. ] § 1226(a)"[10] and not under § 1225.

The United States maintains that the detention and removal of Mr. Velasquez is authorized under 8 U.S.C. §§ 1225(b)(2)(A) and 1229a.[11]

---

[4] *Id*. at 3, ¶ 10.

[5] *Id*. at 3, ¶ 11.

[6] *Id*. at 4, ¶ 15.

[7] *Id.* at 4, ¶ 16.

[8] *Id.* at 4, ¶ 17.

[9] Federal Respondents' Status Report ("Status Report"), at 2, docket no. 10, filed February 18, 2026.

[10] Petition ¶ 59.

[11] Response at 3.

The parties submitted memoranda[12] and presented their positions at a status conference[13] following an Order to Show Cause.[14] For the reasons stated below, the Petition is GRANTED and Mr. Velazquez is ordered released.

**Contents**
1 BACKGROUND ........................................................................................................................ 3
2 LEGAL STANDARD................................................................................................................. 7
3 DISCUSSION ............................................................................................................................ 7
    3.1    Section 1226 Governs Mr. Velasquez's Detention. ................................................. 8
    3.2    Mr. Velasquez's Liberty Interests Vested in November 2021 ............................... 13
    3.3    Federal Respondents Have No Statutory Authority to Continue Detaining Mr. Velasquez.................................................................................................................. 15
    3.4    No Deference Is Owed to Federal Respondents' Reading of the INA. ................. 17
    3.5    Release is the Appropriate Remedy....................................................................... 19
4 ORDER..................................................................................................................................... 20

# 1   BACKGROUND

Mr. Velasquez is a 35-year-old native of Venezuela.[15] Mr. Velasquez joined Acción Democrática ("AD"), a political party that opposes the regime of Venezuelan President Nicolás Maduro, president of the United Socialist Party of Venezuela ("PSUV").[16] According to Mr. Velasquez' detailed declaration, the Maduro regime and the PSUV subjected Mr. Velasquez and his family to an escalating campaign of violence and intimidation, including death threats, tear gas, assault, blocked passport applications, and an attempted abduction of his daughter at

---

[12] Petition, docket no. 1, filed February 14, 2026; Status Report, docket no. 10, filed February 18, 2026; Response, docket no. 16, filed February 19, 2026; Mr. Velasquez's Reply in Support of Petition for Writ of Habeas Corpus ("Reply"), docket no. 18, filed February 23, 2026; Federal Respondent's Response to Second Notice of Briefing at 2 ("Respondents' Second Response"), docket no. 21, filed February 26, 2026; [Petitioner's] Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus ("Second Status Report") at 2, docket no. 22, filed February 27, 2026.

[13] Minute Entry, docket no. 20, filed February 24, 2026; *February 24, 2026, Hearing Transcript for Velasquez v. Brooksby* ("Hearing Transcript") at 66:4–11, docket no. __, filed ____; *see also* Notice of Briefing Requirements and Hearing, docket no. 15, filed February 18, 2026.

[14] Order to Show Cause, docket no. 12, filed February 18, 2026.

[15] Petition at 2, ¶ 1.

[16] *Id.* at 2, ¶ 2.

school.[17] After the regime tried to kidnap his daughter, Mr. Velasquez and his family fled Venezuela.[18]

Mr. Velasquez entered the United States with his wife and three daughters at the southern border in November 2021.[19] Around November 25, 2021, agents from U.S. Customs and Border Protection ("CBP") arrested and detained Mr. Velasquez until November 28, 2021, when an Order of Release on Recognizance ("ORR") was issued.[20] CBP issued Mr. Velasquez a Notice to Appear ("NTA"), thereby initiating a removal proceeding against him under 8 U.S.C. § 1229a.[21]

The NTA charged Mr. Velasquez with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and stated: "You are subject to removal . . . in that you are an alien present in the United States without being admitted or paroled, or who entered in the United States at any time or place other than as designated by the Secretary of the Department of Homeland Security."[22] The NTA alleged: "You entered in the United States at or near HIDALGO, TX, on or about November 25, 2021[.] You were not then admitted or paroled after inspection by an Immigration Officer."[23] The NTA then ordered Mr. Velasquez to appear before an Immigration Judge in West Valley City, Utah, on September 13, 2022.[24]

---

[17] Exhibit 1 to Petition, Asylum Declaration, docket no. 1-1, filed February 14, 2026.

[18] *Id*. at 3, ¶¶ 3-4.

[19] *Id*. at 3, ¶ 5.

[20] *Id*. at 3, ¶ 6; Exhibit 4 to Petition, Order of Release on Recognizance, docket no. 1-4, filed February 14, 2026; Hearing Transcript at 66:4–11, docket no. __, filed ____.

[21] *Id.* at 3, ¶ 8, Exhibit 3 to Petition, Notice to Appear, docket no. 1-3, filed February 14, 2026 (stating it is "In removal proceedings under section 240 of the Immigration and Nationality Act.") Section 240 of the INA refers to 8 U.S.C. § 1229a. U.S. Citizenship and Immigr. Servs., *Immigration and Nationality Act* (last updated July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act.).

[22] Exhibit 3 Petition, Notice to Appear, docket no. 1-3, filed February 14, 2026.

[23] *Id.*

[24] *Id.*

Federal Respondents say CBP released Mr. Velasquez on his own recognizance for "humanitarian reasons."[25] But the ORR reads: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act ("INA") and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with [stated] conditions."[26] Section 236 of the INA is codified in Title 8 U.S.C. § 1226.[27]

The September 13, 2022, hearing did not go forward. Instead, later in 2022, Mr. Velasquez retained counsel and filed his Form I-489 application for asylum, and he was given a biometrics collection date of November 25, 2022.[28] Mr. Velasquez attended his appointment and his biometrics were processed on November 25, 2022.[29] Following this appointment, an individual asylum hearing was set for Mr. Velasquez and his family on April 3, 2026 in West Valley, Utah.[30] On June 8, 2023, Mr. Velasquez was granted an employment authorization and a social security card with the designation "Valid for work only with DHS Authorization."[31]

U.S. military forces captured President Nicolás Maduro and his wife at their compound in Caracas and transported them to New York on January 3, 2026.[32] Following Maduro's capture, Delcy Rodríguez, Venezuela's former vice president and oil minister, was sworn in as interim

---

[25] Response at 2; *see also* Exhibit 4 to Petition, Order of Release on Recognizance, docket no. 1-4, filed February 14, 2026.

[26] Exhibit 4 to Petition, Order of Release on Recognizance; INA § 236 is codified at 8 U.S.C. § 1226.

[27] U.S. Citizenship and Immigr. Servs., *Immigration and Nationality Act* (last updated July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act).

[28] Petition at 3, ¶ 12; *see also* Response at 3.

[29] Exhibit 5 to Petition, Form I-797C, Notice of Action, docket no. 1-5, filed February 14, 2026.

[30] Petition at 3, ¶ 14.

[31] Exhibit 6 to Petition, docket 1-6, filed February 14, 2026.

[32] Cong. Research Serv., IF12930, *U.S. Capture of Venezuela's Nicolás Maduro: Considerations for Congress*, https://www.congress.gov/crs-product/IN12618 (last visited: February 27, 2026).

president. Maduro's political party, PSUV, has not been removed from power, and now Interim President Rodríguez heads both Venezuela and the PSUV.[33]

On February 12, 2026, law enforcement arrested Mr. Velasquez mid-shift at a Walmart store in Washington County, Utah.[34] Mr. Velasquez was not arrested for committing a crime, but simply for his immigration status.[35] He has no criminal history in the United States and has violated no conditions of the ORR.[36]

Because ICE does not have detention facilities or contracts with independent detention facilities in Utah that can accommodate detainees for longer than 72 hours, ICE transferred Mr. Velasquez to the Henderson Detention Center in Nevada.[37] Following his detention, the Executive Office of Immigration Review (EOIR) cancelled Mr. Velasquez Montillo's April 3, 2026, individual hearing regarding his asylum claims.[38] The family is still scheduled to appear that date.

Mr. Velasquez appeared with counsel before an Immigration Judge in Las Vegas for a master calendar hearing on February 26, 2026.[39] Mr. Velasquez was represented by counsel, who heard the immigration judge tell "a similarly situated individual" that he was ineligible for bond and that "he must seek release, if at all, through habeas corpus."[40] The immigration judge scheduled his individual merits hearing for April 7, 2026, at 1:00 PM.[41] The new hearing falls

---

[33] *Id.*

[34] Petition at 1, 4, ¶ 16.

[35] *Hearing Transcript* at 42:20 – 43:10.

[36] *Id.* at 66:4–11.

[37] Response at 1.

[38] The parties have not explained why this hearing date was cancelled.

[39] Respondents' Second Response, docket no. 21, filed February 26, 2026.

[40] Second Status Report at 2.

[41] *Id.* at 2.

four days after Mr. Velasquez's original asylum hearing and is not with his family. Mr. Velasquez remains in removal proceedings under 8 U.S.C. § 1229a, and his asylum application is still pending before the immigration court.[42] The government maintains that his detention is governed by 8 U.S.C. § 1225(b).[43] The parties agree that his asylum petition has not yet been addressed on the merits.[44]

## 2  LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who "is in custody in violation of the Constitution or laws or treaties of the United States."[45] The individual in custody bears the burden of establishing that detention is unlawful.[46]

## 3  DISCUSSION

The legal questions presented are complex and evolving. "As the Ninth Circuit has noted, the INA has been compared to a 'morass,' a 'Gordian knot,' and 'King Minos's labyrinth in ancient Crete.'"[47] Courts in this district,[48] this circuit,[49] and across the country[50] have been asked

---

[42] *Id.*

[43] *Id.* at 3.

[44] *Id.*; *and* Respondents' Second Response at 3; *and* Second Status Report at 2.

[45] 28 U.S.C. § 2241(c)(3).

[46] *Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184, at *4 (D. Utah Jan. 16, 2026).

[47] *Maldonado Vazquez v. Feeley,* 805 F.Supp.3d 1112, 1137 (D. Nev. 2025) (quoting *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020)).

[48] *Tanchez,* 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah Feb. 9, 2026); *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300 (D. Utah Feb. 12, 2026); *Vasquez v. Noem, et al.*, No. 2:25-CV-01146-JNP, 2026 WL 309631 (D. Utah Feb. 5, 2026); *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-CV-01159 TC, 2026 WL 266952 (D. Utah Feb. 2, 2026).

[49] *Jose-De-Jose v. Noem*, No. CIV-25-1454-SLP, 2026 WL 360045 (W.D. Okla. Feb. 9, 2026); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064 (D.N.M. Feb. 5, 2026); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344 at **3-5 (W.D. Okla. Jan. 6, 2026); *Montoya v. Holt*, No. CIV-235-1231-JD, 2025 WL 3733302 at **5-12 (W.D. Okla. Dec. 26, 2025); *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026 WL 184287 (W.D. Okla. Jan. 23, 2026).

[50] *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *2 (N.D. Cal. Sept. 12, 2025); *Bautista v. Santacruz* ("*Bautista I*"), No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026); *Bautista v. Santacruz* ("*Bautista II*") No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025),

to weigh in on the same or similar factual settings in this area of the law.[51] Other circuits have considered the issues.[52] The Tenth Circuit has not yet issued an opinion on the decisive issues, and Federal Respondents acknowledges that no binding authority exists.[53]

After thorough review of the parties' memoranda, the applicable statutes,[54] and persuasive authorities,[55] and the discussion at the status conference, two central legal issues emerge: (1) whether 8 U.S.C. § 1225 or 1226 applies to Mr. Velasquez; and (2) whether due process bars Federal Respondents from switching statutory tracks without notice to or cause from Mr. Velasquez's activities. Each issue is addressed in turn.

### 3.1   Section 1226 Governs Mr. Velasquez's Detention.

The parties dispute which Section of the INA governs Mr. Velasquez's detention: 8 U.S.C. § 1225 or § 1226. This issue arises because of a change in administration interpretation of

---

*judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); *N-E-M-B v. Wamsley*, No. 3:25-CV-989-SI, 2025 WL 3527111 (D. Or. Dec. 9, 2025); *Faizyan v. Casey*, 2025 WL 3208844, at *4-6 (S.D. Cal. Nov. 17, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025); *Petion v. Hyde*, No. 2:25-CV-00535-SDN, 2025 WL 3072567 (D. Me. Nov. 3, 2025); *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025); *Huang v. Almodovar*, No. 25 CIV. 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, at *4 (D.N.J. Oct. 23, 2025).

[51] For a relatively current summary of cases, *see* Kyle Cheney, Politico, Even Trump's own appointees are ruling against ICE's mass detention strategy - POLITICO, Feb. 12, 2026.

[52] *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025); *Castañon-Nava v. U.S. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025); *Buenrostro-Mendez v Bondi*, 166 F.4th 494 (5th Cir. 2026).

[53] Response at 2.

[54] 28 U.S.C. § 2241; 8 U.S.C. § 1225; 8 U.S.C. § 1226.

[55] *Tanchez* 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah Feb. 9, 2026); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *Maldonado Vazquez v Feeley*, 805 F.Supp.3d 1112 (D. Nev. Sept. 17, 2025).

the law, rooted in Interim Guidance Regarding Detention Authority for Applicants for Admission ("Interim Guidance")[56] and *Matter of Yajure Hurtado*.[57]

Two courts in this district have already ruled this issue and reached opposite conclusions.[58] Mr. Velasquez seeks an order similar to *Tanchez v. Noem* and *Carbajal v. Wimmer*, consistent with the Seventh Circuit's decision in which would entitle him to processing under Section 1226 and a bond hearing considering release from custody.[59] Federal Respondents urge the opposite, asking for an order following *Cisneros v. Noem* and the Fifth Circuit's split decision in *Buenrostro-Mendez v. Bondi*.[60] This would require a complete denial of Mr. Velasquez's Petition.[61]

Section 1226(a) provides:

**On a warrant issued by the Attorney General**, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

    (1) may continue to detain the arrested alien; and

    (2) may release the alien on—

        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

        (B) conditional parole; but

    (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence

---

[56] *Interim Guidance*, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX.

[57] 29 I. & N. Dec. 216, 228 (BIA 2025).

[58] *Tanchez*, 2026 WL 125184 at *9; *Carbajal*, 2026 WL 353510 at *8; *Cisneros*, 2026 WL 396300 at *5-*6.

[59] Reply at 1-5.

[60] 166 F.4th 494 (5th Cir. 2026). Judge Campbell's decision in *Carbajal*, 2026 WL 353510, discusses and rejects the majority decision in *Buenrostro-Mendez*.

[61] Response at 6.

>or otherwise would (without regard to removal proceedings) be provided such authorization.[62]

Section 1226 governs "the usual removal process."[63] The Section 1226 process starts when the government files a Notice to Appear with an immigration court. Section 1226 then lets the government arrest and detain noncitizens or release them on bond or on conditional parole.[64] Release is required if the noncitizen can show they are not a danger and will show up at future hearings.[65] If detention continues, the noncitizen gets a bond hearing before an immigration judge.[66] To be released, noncitizens must show by a preponderance of the evidence that they are not a security threat, not a community danger, and not a flight risk.[67]

The Section 1225 removal process is considered the "expedited removal" process.[68] Section 1225(b)(1) provides that:

>If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution.[69]

Two groups of noncitizens are subject to 1225 expedited removal.[70] The first group is noncitizens encountered arriving at a port of entry who are inadmissible because they lack proper

---

[62] 8 U.S.C. § 1226(a) (emphasis added).

[63] *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *2 (N.D. Cal. Sept. 12, 2025) (internal quotations omitted) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)).

[64] *Id.* at *1.

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at *2.

[69] 8 U.S.C. § 1225(b)(1).

[70] *Tanchez,* 2026 WL 125184 at *5; *Aceros,* 2025 WL 2637503 at *2.

documents or misrepresented themselves to gain entry.[71] The second group is "designated" noncitizens.[72] To fall into the second group, a person must meet three criteria: (1) they are inadmissible for the same document or misrepresentation reasons; (2) they have not been continuously present in the United States for the two years before the inadmissibility determination; and (3) the Secretary of Homeland Security has specifically designated them for expedited removal.[73]

In *Tanchez v. Noem*, Mr. Tanchez, a citizen of Guatemala located in Utah, filed a petition for a writ of habeas corpus.[74] Mr. Tanchez and his family presented themselves at the U.S. southern border in November 2023, were released by CBP, and applied for asylum.[75] Judge Campbell summarized the application of the relevant statutes:

> INA proposes two detention schemes that are relevant here. The first, under § 1225, applies "primarily to aliens seeking entry into the United States" and requires the detention of noncitizens who do not pass muster during the inspection process. Noncitizens detained under this framework may only be released under the parole provisions contained in § 1182(d)(5). The second detention scheme, under § 1226, is a "default rule" for "aliens already present in the United States" that allows noncitizens to challenge their detention through a bond hearing in front of an Immigration Judge. Noncitizens detained under this framework may be released with a bond or under conditional parole.[76]

Judge Campbell analyzed the statutory text, legislative history, and nearly three decades of agency practice and concluded "that § 1225 primarily applies to inspections at the border, whereas § 1226 applies to noncitizens living in the country."[77] Judge Campbell granted the

---

[71] *Tanchez,* 2026 WL 125184 at *5; *Aceros,* 2025 WL 2637503 at *2.

[72] *Aceros,* 2025 WL 2637503 at *2.

[73] *Id*. at *2 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109-110 (2020)); *Tanchez,* 2026 WL 12518 at *8.

[74] *Tanchez,* 2026 WL 125184 at *1.

[75] *Id*. at *2.

[76] *Tanchez,* 2026 WL 125184 at *7 (cleaned up) (citing 8 U.S.C. § 1226(a)(2)).

[77] *Id*. at *10.

petition for writ and ordered that Mr. Tanchez was entitled to a bond hearing.[78] Judge Campbell's analysis and result are consistent with the overwhelming majority of cases.[79]

The facts of *Tanchez* are analogous to Mr. Velasquez's case. Both petitioners and their families presented themselves at the southern border, were released by Federal Respondents under Section 236 (or Title § 8 U.S.C. 1226), applied for asylum, and were residing in Utah when they were detained. Federal Respondents have acknowledged that they "cannot meaningfully distinguish this case from *Tanchez*."[80]

Federal Respondents urge adoption of Judge Nielsen's view in *Cisneros v. Noem*.[81] In *Cisneros*, ICE detained a Mexican citizen who lived in the United States for twenty-one years.[82] Judge Nielsen discussed the applicability of §§ 1225 and 1226, and *Buenrostro-Mendez*,[83] and came to the opposite conclusion as Judge Campbell.[84] The *Cisneros* decision is on appeal.[85]

Mr. Velasquez correctly points out that the facts of *Cisneros* are distinguishable.[86] *Buenrostro-Mendez v. Bondi*[87] is equally distinguishable and was distinguished by Judge Campbell in *Carbajal*.[88] Unlike *Cisneros* and *Buenrostro-Mendez*, both *Tanchez* and *Carbajal*

---

[78] *Id*. at *17.

[79] *Id*. at *10-*17; *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064 (D.N.M. Feb. 5, 2026); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *2 (N.D. Cal. Sept. 12, 2025); *E.C. v. Noem*, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *N-E-M-B v. Wamsley*, No. 3:25-CV-989-SI, 2025 WL 3527111 (D. Or. Dec. 9, 2025); *Gabriel J. v. Bondi*, No. 26-CV-00865 (SRN/LIB), 2026 WL 295192 (D. Minn. Feb. 4, 2026).

[80] Response at 5, n.6.

[81] Response at 6.

[82] *Cisneros v. Noem*, No. 2:25-CV-1170-HCN, 2026 WL 396300 (D. Utah Feb. 12, 2026).

[83] 166 F.4th 494 (5th Cir. 2026).

[84] *Id*. at *6-7.

[85] *Cisneros v. Noem*, No. 26-4015 (10th Cir. 2026).

[86] Reply at 5.

[87] 166 F.4th 494 (5th Cir. 2026).

[88] *Carbajal v. Wimmer*, No. 2:26-CV-00093, 2026 WL 353510 (D. Utah Feb. 9, 2026).

share a critical feature with Mr. Velasquez's case: pending asylum applications.[89] The INA contains provisions to ensure asylum seekers' petitions are considered before removal.[90] Mr. Velasquez's asylum claim should be decided before Federal Respondents can take any further action. The facts and holding of *Cisneros* are distinguishable.

*Tanchez*'s logic and holding are adopted here. Section 1225 is applied at the border, while Section 1226 is applied in the interior of the United States.[91] Because Federal Respondents released Mr. Velasquez at the border over four years ago under 8 U.S.C. § 1226 they may only reconsider Mr. Velasquez's release status under Section 1226. He was released on conditions. The conditions have not been violated.

### 3.2   Mr. Velasquez's Liberty Interests Vested in November 2021

In their briefs[92]; at the February 24, 2026, status conference[93]; and at the master calendar hearing[94]; Federal Respondents have never explained why Mr. Velasquez is being detained other than to refer to an unsupported, arbitrary administrative choice. "At some point, ICE elected to arrest Mr. [Velasquez-] Montilla under 8 U.S.C. §§ 1225(b)(2)(A) and 1182(a)(6)(A)(i) for being an alien present in the United States without being admitted or (any longer) paroled for humanitarian reasons."[95] At the status conference, when asked directly "what conditions did [Mr. Velasquez] violate?" Federal Respondents stated, "I am not sure that [Mr. Velasquez] violated a

---

[89] *Id.*

[90] 8 U.S.C. 1182 (a)(9)(B)(iii)(II); 8 U.S.C. § 1225(b)(1)(A)(ii).

[91] *Tanchez*, 2026 WL 125184 at *10.

[92] *Compare* Status Report; *with* Response.

[93] *February 24, 2026, Hearing Transcript for Velasquez v. Brooksby* ("Hearing Transcript"), docket no. __, filed ____.

[94] Addendum at 2–3.

[95] Response at 3.

condition" and that "custody [itself] would be the triggering event."[96] Federal Respondents took the position that Mr. Velasquez's Section 1226 status following his November 2021 border processing carried no guarantees "that we won't change our mind or review the decision or notify you."[97]

Federal Respondents argue they may freely switch between §§ 1226 and 1225.[98] At the February 24, 2026, hearing Federal Respondents stated that the President "is not handcuffed by interpretations of prior administrations who either never thought of it or never looked at it or might have felt differently."[99] In this district [100] and across the country[101] judges have heard this argument and rejected it. The statutes are unchanged. Eagerness for a new tool to remove noncitizens does not change the law.

"As numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)."[102] The rule is simple: "Sections 1226(a) and 1225(b) cannot be applied simultaneously."[103]

---

[96] *Hearing Transcript* at 66:4–11.

[97] *Id*. at 66:22-24.

[98] *Id*. at 41:19–42:21.

[99] *Id*. at 50:19–21.

[100] *Tanchez,* 2026 WL 125184 at *17; *Carbajal,* 2026 WL 353510 at *7-*8.

[101] *N-E-M-B v. Wamsley*, No. 3:25-CV-989-SI, 2025 WL 3527111 (D. Or. Dec. 9, 2025); *Faizyan v. Casey*, 2025 WL 3208844, at *4-6 (S.D. Cal. Nov. 17, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025); *Petion v. Hyde*, No. 2:25-CV-00535-SDN, 2025 WL 3072567 (D. Me. Nov. 3, 2025); *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025); *Huang v. Almodovar*, No. 25 CIV. 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, at *4 (D.N.J. Oct. 23, 2025).

[102] *Gutierrez v. Chesnut*, No. 1:25-CV-01515-DAD-AC (HC), 2025 WL 3514495 (E.D. Cal. Dec. 8, 2025) (*citing Aceros,* 2025 WL 2637503 at *8).

[103] *Aceros,* 2025 WL 2637503 at *8

14

Noncitizen detainees have liberty interests affected by the application of § 1225 or § 1226. Some liberty interests other courts have identified include: due process procedural protections;[104] or reliance interests;[105] "continued freedom from civil immigration confinement";[106] and "the most significant liberty interest there is—the interest in being free from imprisonment."[107]

Federal Respondents released Mr. Velasquez in November 2021 under Section 1226.[108] Mr. Velasquez is entitled to retain the legal protections under Section 1226(a) that Federal Respondents cannot erase by simply "switching tracks."[109] Federal Respondents cannot identify any change in Mr. Velasquez's life that requires revocation of his conditional release. Mr. Velasquez must be released.

### 3.3  Federal Respondents Have No Statutory Authority to Continue Detaining Mr. Velasquez

8 U.S.C. § 1226 governs. Federal Respondents may not continue Mr. Velasquez's detention under § 1225. § 1226 provides two provisions from which Federal Respondents may detain noncitizens: (1) mandatory detention under § 1226(c); and (2) permissive detention under § 1226(a).

§ 1226(c) requires a qualifying criminal offense before Federal Respondents take a noncitizen into custody. In *Alvarez v. LaRose*,[110] ICE detained a Mexican national in San Diego

---

[104] *Id*.

[105] *Id*. (*citing Huffman Memorandum* (Jan. 23, 2025) (recognizing that noncitizens granted discretionary parole have "reliance interests")).

[106] *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025).

[107] *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395 (S.D.N.Y. 2025).

[108] Exhibit 4, Order of Release on Recognizance; INA § 236 is codified at 8 U.S.C. § 1226.

[109] *Aceros,* 2025 WL 2637503 at *8 (*citing Lopez Benitez* at *5); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *14 (S.D.W. Va. Feb. 4, 2026).

[110] *Alvarez v. LaRose*, No. 25-CV-3078-RSH-MMP, 2025 WL 3443162 (S.D. Cal. Dec. 1, 2025).

who had committed no crime.[111] The court held that § 1226(c) permits mandatory detention only if two conditions are met: (1) the petitioner is "[a]n alien present in the United States without having been admitted or paroled"; and (2) the petitioner "has been arrested for or committed an enumerated crime."[112] The petitioner satisfied the first condition but not the second. The court ordered immediate release.[113]

§ 1226(a) requires a warrant. The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."[114] In *Gabriel J*,[115] without a warrant, ICE detained a Venezuelan national in St. Paul, Minnesota, with a pending asylum claim.[116] The court determined § 1226, not § 1225, governed the petitioner's detention.[117] ICE could not produce a warrant or identify any other lawful basis for detention. The court ordered immediate release.[118]

At the status conference, Federal Respondents were asked "[w]as there any kind of warrant or authorization or notice before the petitioner was arrested on February the 12th?" Federal Respondents answered: "I don't know the answer to that."[119] No warrant appears anywhere in Federal Respondents' filings.[120]

---

[111] *Id.* at *1-2.

[112] *Id.* at *3.

[113] *Id.* at *4.

[114] 8 U.S.C. § 1226(a).

[115] *Gabriel J. v. Bondi*, No. 26-CV-00865 (SRN/LIB), 2026 WL 295192 (D. Minn. Feb. 4, 2026).

[116] *Id.* at *1.

[117] *Id.* at *2-3.

[118] *Id.* at *3.

[119] *Hearing Transcript* at 42:25-43:1.

[120] *See* Status Report; Response; *and* Second Status Report.

16

Federal Respondents were then asked "[d]o you know if he was arrested on criminal charges at that time or just on the immigration?" Federal Respondents answered, "[a]s far as I'm aware there has been no criminal conduct by Mr. [Velasquez]."[121] All parties agree Mr. Velasquez has committed no crime.

Federal Respondents do not satisfy the preconditions for detention under § 1226(a) or (c). Therefore, *Gabriel J.* and *Alvarez* compel the same result here. Federal Respondents can produce neither an arrest warrant nor evidence of a qualifying crime. Immediate release is the only appropriate remedy. Federal Respondents will be ordered to release Mr. Velasquez immediately from the Nevada Southern Detention Center.

### 3.4   No Deference Is Owed to Federal Respondents' Reading of the INA.

The Federal Respondents' reading of the INA is not entitled to deference.[122] In *Roshniashvili v. Allen*, the petitioner was a Georgian national who entered the United States on December 24, 2022.[123] Mr. Roshniashvili timely made an asylum application, obtained work authorization, maintained a clean criminal record, and met every obligation imposed by immigration authorities.[124] ICE nonetheless arrested him on an interstate highway under § 1225

---

[121] *Hearing Transcript* at 43:2-10.

[122] *Roshniashvili v. Allen, et al.*, No. 2:26-CV-00093, 2026 WL 446657 (S.D.W. Va. Feb. 17, 2026); *Galvan Lopez v. Noem*, No. 2:25-CV-1288 JB/DLM, 2026 WL 252513 (D.N.M. Jan. 30, 2026); *Camacho v. Perry*, No. 3:26-CV-76, 2026 WL 414937 (E.D. Va. Feb. 15, 2026); *Fuentes Herrera v. Noem*, No. 4:26-CV-45-RGJ, 2026 WL 561102 (W.D. Ky. Feb. 27, 2026); *Eastern Division Nolvin Ismael Herrera v. Secretary of the U.S. Department of Homeland Security, et al*., No. 4:26-CV-00125-JRK, 2026 WL 554707 (N.D. Ohio Feb. 27, 2026); *Ruiz v. Olson, et al*., No. 4:26-CV-51-RGJ, 2026 WL 483478 (W.D. Ky. Feb. 20, 2026); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938 (N.D. Tex. Jan. 28, 2026).

[123] *Roshniashvili*, No. 2:26-CV-00093 at *1.

[124] *Id*. at *5-*6.

for a "redetermination" based on the July 2025 interim guidance and *Hurtado*.[125] Mr. Roshniashvili filed a habeas petition challenging his detention.[126]

*Roshniashvili* held that DHS's statutory interpretation was owed no deference under *Loper Bright v. Raimondo*.[127] The court determined that § 1226, not § 1225, applies to noncitizens already present in the country while removal proceedings are pending.[128] Section 1226(a) permits arrests only with a warrant issued by the Department of Homeland Security Secretary. No such warrant was issued for Mr. Roshniashvili.[129] The petition was granted, and Mr. Roshniashvili's immediate release was ordered.[130]

The Federal Respondents claim Mr. Velasquez, like Mr. Roshniashvili, was detained under § 1225 after being inspected at the border and paroled under §1226. He has a pending asylum claim, was not accused of a crime, and was arrested without a warrant. The longstanding practice of the government has been to process noncitizens under § 1226, and not under § 1225, as multiple courts have found.[131] While the current interpretation does not require deference, "the longstanding practice of the government"[132] does deserve deference.

---

[125] *Id*. at *1.

[126] *Id*. at *5.

[127] *Id*. at *4 (*citing Loper Bright v. Raimondo,* 603 U.S. 369, 403 (2024)).

[128] *Id*. at *6.

[129] *Id*.

[130] *Id*. at *8.

[131] *Kazybayeva v. Warden of Otay Mesa Det. Ctr.*, No. 26-CV-0421-GPC-MMP, 2026 WL 280478, at *2 (S.D. Cal. Feb. 3, 2026); *Lagarda-Vega v. Noem*, No. 3:25-CV-02970-GPC-DDL, 2025 WL 3558931, at *4-*7 (S.D. Cal. Dec. 11, 2025).

[132] *Loper Bright*, 603 U.S. at 368.

### 3.5  Release is the Appropriate Remedy

"If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release."[133] That standard is met here.

Federal Respondents argue that ICE detained Mr. Velasquez "pursuant to 8 U.S.C. §§ 1225(b)(2)(A) and 1229a."[134] But Federal Respondents cannot apply § 1225 to Mr. Velasquez so his continued detention under that statute is unlawful. Federal Respondents cannot fall back on § 1226 as they have not established the statutory conditions for either mandatory or permissive detention under § 1226. Mr. Velasquez has requested immediate release from custody[135] and is entitled to that relief.

Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur.[136] Those cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226. Ordering a bond was an option on November 28, 2021, but the officer elected not to require it. Mr. Velasquez was released on conditions. Currently, immigration officers and judges believe they are bound by erroneous administrative guidance and by an erroneous BIA decision to not offer release on bond.[137] They do not recognize a court orders vacating these administrative directions.[138] There

---

[133] *United States v. Allen,* 139 F.3d 913 (10th Cir. 1998) (*quoting Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir.1990)).

[134] Response at 3.

[135] Petition at 17.

[136] *Ramirez v. Baltasar*, No. 26-CV-00199-NYW, 2026 WL 318989, at *4 (D. Colo. Feb. 6, 2026); *Escobar v. Baltazar*, No. 26-CV-00296-NYW, 2026 WL 503313, at *6 (D. Colo. Feb. 24, 2026); *Jhony A. v. Bondi*, No. 26-CV-146 (JMB/LIB), 2026 WL 114334, at *3 (D. Minn. Jan. 15, 2026); *Sales Ambrocio v. Noem*, No. 4:25CV3226, 2025 WL 3295530, at *7 (D. Neb. Nov. 25, 2025); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064 (D.N.M. Feb. 5, 2026).

[137] Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX and *Matter of Yajure Hurtado*. 29 I. & N. Dec. 216, 228 (BIA 2025).

[138] *Bautista II* at *3, *5, *9, and *10.

has been no notice of a change in circumstances requiring modification of the November 2021 ORR.

This order will not require a bond hearing or use it as a pre-requisite to release.

## 4 ORDER

IT IS HEREBY ORDERED THAT Mr. Velasquez's Petition for Writ of Habeas Corpus[139] is GRANTED.

IT IS FURTHER ORDERED:

    1.    Federal Respondents must immediately release Mr. Velasquez under the terms set in the November 28, 2021, Order of Release on Recognizance.[140]

    2.    Within 4 hours of the issuance of this order, Respondents must file a report on the status of their compliance with this order to release Mr. Velasquez.

    3.    Federal Respondents must reinstate, by new notice, Mr. Velasquez's April 3, 2026, asylum hearing date and location with his family, and file a copy of that notice with this court.

    4.    The United States must not again attempt to use 8 U.S.C. § 1225 to detain Mr. Velazquez.

    5.    Any request by Mr. Velasquez to recover fees or costs must be made by motion.

Signed March 2, 2026.

BY THE COURT

_____
David Nuffer, United States District Judge

---

[139] Petition for Writ of Habeas Corpus, docket no. 1, filed February 14, 2026.
[140] Docket no. 1-4, filed February 14, 2026.